585 P.2d 1105

**Doroteo GABALDON and Clementina Gabaldon, his wife, Plaintiffs-Appellees,**

v.

**Lorenzo SANCHEZ, d/b/a Sanchez Land Company, Defendant-Appellant.**

No. 3153.

Court of Appeals of New Mexico.

Oct. 3, 1978.

Floyd D. Wilson, Ahern, Montgomery & Pongetti, Albuquerque, for defendant-appellant.

Juan G. Burciaga, Ussery, Burciaga & Parrish, Albuquerque, for plaintiffs-appellees.

## OPINION

SUTIN, Judge.

This action was brought in the District Court of Valencia County to recover damages to plaintiffs' real property and to obtain injunctive relief as a result of sand and dirt blowing onto plaintiffs' property from defendant's adjoining property. The cause was tried to the court without a jury and judgment was entered awarding plaintiffs $3,000.00 in damages and ordering defendant to implement a terrain management program. Defendant appeals. We reverse.

In pertinent part, the trial court found that plaintiffs' land was adjacent and contiguous with defendant's land; *that defendant stripped natural vegetation from his land without insuring proper and adequate terrain management; that as a result, plaintiffs' property was damaged due to windblown topsoil*; that defendant failed and refused to undertake *proper terrain management*, although required to do so; that although defendant acknowledged a responsibility for implementation of an adequate *terrain management program*, and stated to soil conservation authorities and Valencia County representatives that such a plan would be implemented, defendant willfully failed to comply and to implement such a plan; *that the failure of defendant to implement an adequate terrain management plan is the cause of plaintiffs' damages.*

The trial court concluded that defendant violated the New Mexico Subdivision Act [§§ 70–5–1, et seq., N.M.S.A.1953 (Repl.Vol. 10, pt. 2, 1975 Supp.)] and, in addition, the trial court concluded that defendant's acts and omissions constituted nuisance, negligence and trespass. The defendant was ordered by the court to immediately implement an adequate terrain management plan, and to remove the sand which accumulated on his land adjacent to plaintiffs' irrigation ditch.

Plaintiffs' fourth count was based upon a violation of § 70–5–11(A)(6) of the New Mexico Subdivision Act. Section 70–5–11(A)(6) provides that:

Any subdivider having an approved type-one or type-two subdivision *shall furnish* :

\* \* \* \* \* \*

(6) *terrain management* to fulfill the provisions for terrain management proposed by the subdivider in his disclosure statement. [Emphasis added.]

" '[T]errain management' means \* \* \* measures required for adapting proposed

development to existing soil characteristics and topography." Section 70–5–2(F).

It is obvious from the findings made that the only conclusion at which the court could arrive was defendant's violation of the New Mexico Subdivision Act. No findings were made that could support any theory that defendant owed plaintiffs a duty as to negligence, nuisance or trespass, and that defendant breached that duty. On the other hand, defendant requested findings of fact that the actions of the defendant in grading and leveling his property were a reasonable and natural use of his land; that defendant's grading and leveling of the land was not negligence, did not constitute a nuisance, nor did it result in trespass on lands of plaintiffs. The trial court did not refuse these findings, nor adopt any findings to the contrary.

Nevertheless, to resolve the issues on the merits, there are two questions to decide:

A. Are the plaintiffs allowed to file a claim for damages under the New Mexico Subdivision Act?

and

B. Does the defendant have a common-law right to remove brush and vegetation free of liability to adjoining landowners?

The answer to the first question is "No." The answer to the second question is "Yes."

A. *Plaintiffs had no claim under New Mexico Subdivision Act.*

Plaintiffs alleged that among the class of persons and lands the statute was designed to protect were landowners owning land adjoining the lands being subdivided and that plaintiffs are members of that class.

Defendant's subdivision is within the meaning of the New Mexico Subdivision Act and, therefore, controlled by that statute. The Board of County Commissioners of Valencia County, the county in which the defendant's land is located, approved defendant's subdivision.

In his disclosure statement, defendant stated that he would plant the leveled part with winter wheat before the water season

was over or, in the alternative, he would install a sprinkler system. Defendant did not furnish this terrain management.

■ Section 70–5–26 provides civil remedies for injunctive relief and mandamus. The only persons permitted to compel defendant to comply with the Act are the district attorney or the attorney general. In addition, this section reads:

However, nothing in this section shall be construed as limiting *any common-law right of any person in any court relating to subdivisions.* [Emphasis added.]

■ Plaintiffs had the common-law right to pursue defendant in court and defendant had the common-law right of defense. However, the legislature did not provide that a person's common-law rights shall extend to enforcement of the New Mexico Subdivision Act or that plaintiffs have a claim for relief against defendant for violating § 70–5–11(A)(6). Section 70–5–26 does not impose civil liability for damages against defendant for violating any provisions of the Act. Nor does the statute refer to adjoining landowners directly or indirectly, nor to sand and dirt blowing on adjacent property. The Act did not grant plaintiffs' claim for relief against defendant. We are unable to agree with plaintiffs that the Act was designed to protect landowners owning land adjoining land being subdivided.

We believe, however, that defendant should be compelled to comply with the Act. This result can be obtained if plaintiffs will convince either the district attorney of Valencia County or the attorney general to proceed for injunctive relief or mandamus.

Plaintiffs did not have a claim for relief under the New Mexico Subdivision Act.

B. *Defendant had common-law right to remove brush and vegetation free of liability to adjoining landowners.*

Defendant's first point is that the findings of the trial court did not establish any breach of duty owing by defendant to plaintiffs. It is the essence of defendant's argument that under the common law, a land-

owner has a legal right to clear his own land of natural brush and vegetation even if it causes dirt to blow on the land of an adjacent landowner. This is the only issue to decide.

In argument, defendant relies upon the common-law doctrine that grants landowners the right to clear their lands. Plaintiffs did not dispute this concept. Defendant cited the following cases in support of his position. *Stewart v. Birchfield*, 15 Cal.App. 378, 114 P. 999 (1911); *Preston v. Schrenk*, 77 Idaho 481, 295 P.2d 272 (1956); *Robinson v. Whitelaw*, 12 Utah 2d 240, 364 P.2d 1085 (1961); *Hoover v. Horton*, 209 S.W.2d 646 (Tex.Civ.App.1948).

In *Stewart*, plaintiff's complaint alleged that defendant removed all brush and leveled his adjoining land and left it wholly unirrigated and uncared for; that large quantities of sand and soil were permitted to blow over on plaintiff's land to plaintiff's damage. A demur to plaintiff's complaint was sustained and affirmed on appeal. The court said:

> * * * If the defendant had the right to remove brush or trees growing upon his property, which right he undoubtedly possessed as an incident to the ownership of the ground, then, *unless he was guilty of some negligent act while removing the same*, he would not be responsible in damages to plaintiff. He had the right not only to clear his ground, but to leave it unirrigated, if he saw fit, thereafter, even though his failure to so irrigate it might have produced the damage of which plaintiff complains. "*Every man may use his own land for all lawful purposes* to which such lands are usually applied, without being answerable for the consequences, provided he exercises ordinary care and skill to prevent any unnecessary injury to the adjacent landowner. It is not, therefore, necessarily negligence on the part of the landowner to make a use of his land which inevitably produces loss to his neighbor; *for as he may willfully adopt such a course, and yet not be a wrongdoer, much less is he liable for unintentionally doing that which he has a right to do intentionally.*" Sherman & Redfield on Negligence, § 700 (Revised Edition, 1941, Vol. 4, § 773). [Emphasis added.] [114 P. at 1000.]

In *Preston*, defendant permitted a band of sheep to pasture on his land. That the sheep caused tumbleweeds to become loosened, the topsoil to become pulverized and susceptible to blowing, and the prevailing winds to blow tumbleweeds and soil on plaintiff's wheat crop to plaintiff's damage. The court instructed the jury that:

> [A] land owner may use his land in any manner which he sees fit, *provided it is not for an unlawful purpose*, and provided he shall so use and enjoy his property that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property. [Emphasis added.] [295 P.2d at 275.]

But see *McIntosh v. Brimmer*, 68 Cal. App. 770, 230 P. 203 (1924) where maintaining chicken corrals was declared to be a nuisance. In the instant case we are not involved with a landowner that brings something on his land that causes dirt and dust to damage the property of another.

*Robinson* held that a landowner who removed sagebrush and natural growth from his land in order to plant crops but who later stopped cultivation, was not liable in damages caused by sand and dirt which blew onto adjoining property, and the adjoining landowner was not entitled to abatement of an alleged nuisance. The court said:

> * * * Under the circumstances we think defendant would have difficulty in stopping the wind or replacing the sagebrush, and are constrained to believe and hold that equitable principles could do no better. [364 P.2d at 1085.]

*Hoover* holds the test to be, not whether the injury was a natural consequence, or whether the act is in the nature of a nuisance, but whether the landowner's use of the property was a reasonable exercise of dominion which the owner has by virtue of his ownership. In determining this, the court will consider all the interests affected,

the landowner's and those of his neighbors, and the court will weigh each interest in view of public policy.

We turn to additional authority on this subject matter. *Boarts v. Imperial Irr. Dist.*, 80 Cal.App.2d 574, 182 P.2d 246 (1947) followed *Stewart, supra.* It held that a landowner has no duty to cut and destroy weeds naturally growing on its land, and hence is not liable for damages to crops on adjacent land as a result of weed seeds being blown thereon by prevailing winds. *United States v. Shapiro, Inc.*, 92 U.S.App. D.C. 91, 202 F.2d 459 (1953) held that the landowner who did nothing more than grade his land in a manner that was reasonable, usual and non-negligent, and who discharged nothing but surface water directly from its land onto neighboring land, committed no wrong. The court said:

> * * * In this jurisdiction the rule is— as it is in all the states following the so-called "common law" or "Massachusetts" rule—that surface water is a common enemy which may be repelled or deflected onto the land of other proprietors, *provided such deflection is the result of an ordinary use of the land* and is not accomplished by means of channels, ditches or other extraordinary construction. * * * [Emphasis added.] [202 F.2d at 460.]

■ The wind, like surface water, is a common enemy, but, unlike surface water, cannot be repelled or deflected. The landowner does not know which way the wild wind blows.

*Ratcliffe v. Indian Hill Acres*, 93 Ohio App. 231, 113 N.E.2d 30 (1952), also a surface water case, followed *Stewart, supra.*

In *Middlesex Co. v. McCue*, 149 Mass. 103, 21 N.E. 230, 14 Am.St.Rep. 402 (1889), Justice Holmes put the matter in this light:

> The respective rights and liabilities of adjoining land-owners cannot be determined in advance by a mathematical line, or a general formula; certainly not by the simple test of whether the obvious and necessary consequence of a given act by one is to damage the other. *The fact that the damage is foreseen, or even in-tended, has nothing to do with the matter apart from statute. Some damage a man must put up with, however plainly his neighbor foresees it before bringing it to pass.* [Citation omitted.] Liability depends upon the nature of the act, and the kind and degree of harm done, considered in the light of expediency and usage. For certain kinds there is no liability, no matter what the extent of the harm. * * We are of the opinion that a man has a right to cultivate his land in the usual and reasonable way, as well upon a hill as in the plain, and that damage to the lower proprietor of the kind complained of [filling up plaintiff's millpond] is some-thing that he must protect himself against as best he may. *The plaintiff says that wall would stop the trouble. If so, it can build one upon its own land.* [Emphasis added.] [21 N.E. at 231.]

■ For 100 years, the law has denied relief to an adjoining landowner for legal acts done by the owner of adjoining property which does not infringe on the rights of the neighbor, even though he was influenced in the doing of it by wrong and malicious motives. The courts will not inquire into the motive actuating a person in the enforcement of a legal right. *Phelps v. Nowlen*, 72 N.Y. 39 (1878).

■ We conclude that defendant had the legal right to remove brush and vegetation from his land and was not negligent in removing them. Its purpose was to improve the land for subdivision purposes, and this was not an unlawful purpose.

## C. *Orders entered against defendant are erroneous.*

The trial court ordered defendant to remove the sand and soil which accumulated on his land adjacent to the irrigation ditch of plaintiffs or, in the alternative, to take such steps to insure that the accumulated soil does not fall into plaintiffs' irrigation ditch; that defendant immediately implement an adequate terrain management program to insure that there is not recurrence of damage to plaintiffs. As stated, supra,

the only persons permitted to compel defendant to comply with the Act are the district attorney or the attorney general. The trial court's orders are reversed.

### D. The restraining order affecting defendant is affirmed.

The trial court restrained defendant from harassing, threatening and molesting plaintiffs until the further order of the court. This order is affirmed.

Reversed. Apart from the order of restraint, this case is reversed, and the judgment shall be vacated and judgment entered for defendant. Defendant shall recover his costs on this appeal.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, Judge (dissenting).

I respectfully dissent. The defendant requested findings that in grading and leveling his property was a reasonable and natural use of his land and that this did not constitute a nuisance. The majority state that the trial court did not refuse these findings, nor adopt any findings to the contrary. The trial court's findings 4, 5, and 7 and conclusion of law 3 are directly contrary to defendant's requested findings.

In my opinion the trial court's findings are supported by substantial evidence and that it correctly concluded that defendant's actions constituted a private nuisance. I believe that the majority misconstrue the basic issue. The issue is not whether defendant's actions were negligent or were a violation of the Subdivision Act, or constituted a trespass, but whether his actions substantially interfered with plaintiff's use and enjoyment of his property. The record shows a very substantial interference with plaintiff's use of his property due to the acts of the defendant. I would affirm on the basis of private nuisance.